## JAMES B. GRAVES v. STATE.

1. An indictment charging murder in the language of the forty-fifth section of the Criminal Procedure act is constitutional and legal.
2. The defence of insanity must be established by a preponderance of proof; and in such case the burthen is not on the state to satisfy the jury of the sanity of the prisoner beyond a reasonable doubt.

This case came before the court on writ of error to the Oyer and Terminer of the county of Essex. The plaintiff in error was tried at the January Term, 1882, of the Essex Oyer, and convicted of murder in the first degree. The indictment was as follows:

"Essex Oyer and Terminer and General Jail Delivery, December Term, A. D. 1881.

"Essex county, to wit:—The grand jurors of the State of New Jersey, in and for the body of the county of Essex, upon their oath, present that James B. Graves, late of the city of Newark, in the county of Essex aforesaid, on the twentieth

day of December, in the year of our Lord one thousand eight hundred and eighty-one, with force and arms, at the city aforesaid, in the county aforesaid, and within the jurisdiction of this court, one Edward Soden, then and there being in the peace of God and this state, wilfully, feloniously, deliberately and of his malice aforethought, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

"G. N. ABEEL,

"Prosecutor of the Pleas."

Argued at February Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and PARKER.

For the plaintiff in error, Samuel Kalisch

For the state, F. W. Stevens and Oscar Keen.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The first objection taken to the proceedings in this case is, that the indictment does not legally charge the crime of murder in the first degree. The pleading thus challenged is in exact conformity with the requirements of the forty-fifth section of the act regulating proceedings in criminal cases, (Rev., p. 275,) with the exception that it interpolates the adverb "deliberately" in its description of the offence. It follows the statutory language in the essential particulars of charging "that the defendant did wilfully, feloniously and of his malice aforethought kill and murder the deceased;" so that if there be any illegality in the mode of charging the crime, as a matter of pleading, the fault is not in this formula but in the statute itself. And, in point of fact, it is this act which the argument addressed to the court puts to the test, the first exception to it being that it is repugnant to section 8 of article I. of the constitution of this state. The provision thus invoked contains the declara-

tion that in "all criminal prosecutions the accused shall be informed of the nature and cause of the accusation." It is also argued that section 9 of the same article reflects a light on the nature of the privilege thus guaranteed, in the regulation that "no person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury," except in certain enumerated cases which do not touch the present matter of inquiry.

The ingenious and elaborate reasoning on which the position here taken is sought to be held, can be thus summarized : That the statute of this state which defines the crime of murder has altered the common law by adding to the constitutents of the crime in its higher form, those of "deliberation and premeditation," and that as a consequence the offence of that rank must be laid in the indictment, with a special averment of the presence of such characteristics ; and that by the same statute the offence is divided and made two substantive and distinct felonies—the one punishable with death, the other with imprisonment for a definite period ; and that, therefore, an indictment which charges in a general form the perpetration of a murder, without indicating which of these two separate crimes is meant, does not fulfil the constitutional requirement of informing the defendant of the "nature and cause of the accusation."

If the basis of this reasoning be sound, it is apparent that the result is that there has never been in this state, since the enactment of this ancient law defining the crime of murder, and the adoption of the constitution of 1844, a legal indictment or a legal conviction with respect to this offence.

There have been no indictments drawn, treating the provision assigning degrees to the crime of murder, as having the effect which is now claimed. Such a course would be inconsistent with the statute itself, for it is drawn with the evident purpose that the charge should be in the general form, as at common law, of an accusation of murder, indicating the crime in its most heinous degree. This is clearly apparent from the statutory direction contained in the section defining the crime,

" that the jury before whom any person *indicted for murder* shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree." This duty assigned to the jury necessitates the crime to be laid in a form that embraces it in both its degrees. The effect of the statute in question, according to the entirely-settled construction, was neither to add any case to, nor take any case from, the class of crimes which, at common law, was denominated murder, for every act that was murder at common law is still murder in this state. What this statute effected was to distribute the offence into two classes for the sake of adjusting the punishment. Those facts that constituted murder in the second degree were all necessary parts and constituents of murder in the first degree, and the conviction of the lesser crime under the charge of the higher crime which embraced it was, upon well-known principles, entirely normal. The practice is consistent with scientific rules, and, at all events, has been too long established by usage and judicial recognitions to be now open to impeachment. And it is manifest that this interpretation of the statute takes away from the objection to the late act, which simplifies the formula of the charge of murder, on the ground of its alleged unconstitutionality, every semblance of plausibility, for the abbreviated statement which is authorized plainly informs the defendant of the nature and cause of the accusation. It does not interfere with the substance and pith of the pleading. What it effects is to strip it of its technical jargon and unmeaning circumstances. When, in its succinct accusation, it avers that the defendant " did wilfully, feloniously and of his malice aforethought kill and murder the deceased," its plain meaning is that the charge is of murder in the first degree, as that crime is defined by the laws of this state, and has the same effect as the old and verbose form of pleading in common use in this respect had possessed. The intention of the legislature is plain, to substitute a simple pleading for a cumbrous and useless one, and such an amelior-

ation of the law is, fortunately, not incompatible with the constitution.

The objection cannot prevail.

The remaining ground of alleged error resides in the refusal of the court, at the trial, to charge, at the instance of the counsel of the defendant, the following proposition, that is to say: "That if the jury have any reasonable doubt as to whether the prisoner was sane or insane at the time he committed the act, the doubt should be resolved in favor of the prisoner's insanity." The bill of exception states "that this proposition the court refused to charge otherwise than as had been charged," and thereupon an exception was taken.

From this statement it will be noted that the exception taken has no connection with the charge actually made to the jury, except in the respect that a reference to it is necessary to ascertain whether or not it contained, in substance, the legal rule as propounded by the defence. That it did not contain such rule is evident, and hence the only question now before the court for solution is, not whether what the court said upon this subject to the jury was legally correct, but whether the refusal to instruct the jury as requested was legal. Is it the law of this state that when, in a criminal case, the defence of insanity is interposed, if the jury have a reasonable doubt on the subject, after looking through the proofs, that such defence shall prevail?

Every one versed in the practice of the criminal law is aware that the proposition claimed to be law by the counsel of the prisoner in this case is one, so far as authority is concerned, of the most doubtful of legal problems. The judicial mind has been so perplexed with the subject that it is difficult to say whether on the affirmative or the negative side of the question there is a preponderance of opinion. The elaborate and well-considered briefs of the respective counsel in this case are replete with antagonistic decisions on this point, many of which are ably reasoned, and are, from every consideration, entitled to the highest respect. But although the law on this head is thus shown to be elsewhere in this condition of uncer-

tainty, it does not seem to me that it can correctly be said to be in such a condition in this state. It is safe to say that for over half a century this proposition now claimed to be law has been rejected in our practice. Our reports show that such repudiation occurred in Spencer's case, which is a case of mark in the criminal annals of the state, and which took place in the year 1843. 1 *Zab.* 396. And, indeed, as far as experience or tradition extends, it has been the invariable course to instruct the jury that the law, *prima facie*, presumes mental sanity, and that when, in the given case, the prisoner would overcome such presumption, he must exhibit a clear preponderance of proof in favor of such defence. After such an inveterate and universal acceptance of a rule of practical importance and frequent application, it must be considered that the time has passed for testing its correctness by the criterion of speculation. If such a rule of evidence, after so conspicuous and protracted an existence, is to be pushed aside, or even is to be considered as liable to challenge on theoretic grounds, it is difficult to divine upon what stable basis the administration of the law is to be conducted. Very many of the legal regulations which belong to the trial of causes, both criminal and civil, are the creatures of custom and usage, and if such regulations, after having been unquestioned and enforced for half a century, are to be deemed, with respect to their legality, subject to assault, the utmost uncertainty and confusion would be introduced. The course taken by the judge on the trial in this case was in accordance with the settled law of this state.

Let the judgment be affirmed.